UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                                  :

UNITED STATES OF AMERICA                :

        - v. -                        :        **18 CR 432 (CM)**

Steven Guzman,                            :

                Defendant.                :

------------------------------------------------------------x

## DEFENDANT STEVEN GUZMAN
## SENTENCING MEMORANDUM

                                    Federal Defenders of New York
                                    Attorneys for Defendant
                                        **Steven Guzman**
                                   52 Duane Street - 10th Floor
                                  New York, New York  10007
                                  Tel.: (212) 417-8743

                                  **Jennifer E. Willis, Esq.**
                                      Of Counsel

TO:    Geoffrey S. Berman, Esq.
        United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, New York 10007
        Attn.: **Robert Sobelman, Esq.**
              Assistant United States Attorney

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
Executive Director
and Attorney-in-Chief

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

October 4, 2018

**BY HAND DELIVERY and ECF**

Honorable Colleen McMahon
Chief United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  **United States v. Steven Guzman,**
        **18 CR 432 (CM)**

Dear Chief Judge McMahon:

Mr. Guzman is scheduled to be sentenced by the Court on October 17, 2018 following a plea of guilty to one count of distribution of fentanyl, in violation of 21 U.S.C. § 841(b)(1)(c). Mr. Guzman is indisputably not a career offender and his stipulated guidelines range is therefore 15 to 21 months.[1] I urge the Court to vary downwards from this range and impose a sentence of time served (slightly more than six months on the date of sentencing) with a term of supervised released to include residential ███████████████████████ treatment.

**Mr. Guzman's background and character**

I will not repeat Mr. Guzman's entire personal history, which is well documented in the Presentence Report ("PSR") and in the letter from social worker Brittany Larson attached as **Exhibit A**, but I would ask the Court to take note of three especially important factors which warrant imposing the requested sentence – Mr. Guzman's mental health, substance abuse and physical health. [2]

---

[1] Discussed more fully on page 4, the recent Second Circuit case <u>United States v. Townsend</u>, No. 17-757-cr held that NY criminal sale in the 5th degree is not a "controlled substance offense" and therefore not a predicate for career offender.

[2] ███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

Hon. Colleen McMahon  October 4, 2018
Chief United States District Judge  Page 2

Mr. Guzman faced poverty, abuse and trauma as a child. Likely in response to these conditions, he began using heroin at the incredibly young age of nine and escalated to a two-gram a day addiction by age 13. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Rather than receive the needed support and treatment, he was essentially given triage care by doctors and was kicked out of his home, at age 13, by his mother.

As probation acknowledges, "Guzman's mental health issues, difficult childhood, and substance abuse issues have had a profound negative impact on his life, which ultimately contributed to the poor decision to engage in criminal activity." See PSR, page 22. Mr. Guzman began with petty crime, but by his twenty's and thirty's had escalated to more serious offenses and he spent a number of years in and out of prison. In between prison terms, he spent seven years homeless on the streets and in his words "I don't think there was a moment I was sober."

After his last serious felony in 2004, eighteen years ago, Mr. Guzman came home from prison in 2010 determined to change his life. He was partially successful, engaging in comprehensive treatment, maintaining his sobriety for several years and becoming part of a functioning family with a new wife and step-children. Unfortunately, decades of life on the streets and daily heroin and cocaine use, took their toll on Mr. Guzman. Over the last eight years, Mr. Guzman, has suffered from one physical ailment after another.

Now 53, Mr. Guzman appears significantly older. 

**Offense Conduct**

It was these three factors which directly led to the offense conduct. The ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ lured him towards heroin, but he was able to maintain a partial sobriety until a series of tragic deaths in his family plunged him into extreme depression and into a full heroin relapse. In his youth, Mr. Guzman lost his grandmother, step-father and an older brother. But in rapid succession beginning in 2013, he lost a brother to cancer, a sister and nephew were run over by a car, another nephew was killed in the Pulse Nightclub shooting, his youngest brother had a bone infection leading to a leg amputation and finally his mother died in 2016. His sister Gertrudes writes, "Steve is a good person who has been broken and whose grief

Hon. Colleen McMahon October 4, 2018
Chief United States District Judge Page 3

has not found comfort." **Exhibit B.** After these tragedies Mr. Guzman's  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" **Id.**

When Mr. Guzman relapsed he was living with his ex-wife and her children and was supporting himself on a limited income from disability payments. In order to numb his physical and emotional pain, he began to sell small amounts of heroin in order to feed his own addiction. He would typically purchase a bundle of ten bags from a local dealer, use six or seven and sell the remaining three or four.

**The Appropriate Sentence**

**A. Guidelines Discussion**

The government through the plea agreement and the PSR posit that the guidelines range for Mr. Guzman is 151 to 188 months based on a determination that he is a career offender. Pursuant to 4B1.1, a career offenders must currently be charged with a crime of violence or a controlled substance offense and must have two prior convictions for either controlled substance or crimes of violence.

The two predicate offenses identified by the government as the basis for this determination are a 1998 criminal sale of controlled substance in the fifth degree and a 2005 New York robbery in the third degree. On July 23, 2018, after Mr. Guzman's plea of guilty, the Second Circuit held that New York criminal sale in the fifth degree is not a "controlled substance offense" within the meaning of 4B1.2. See United States v. Townsend, 17-757-cr[3]. As such Mr. Guzman does not meet the criteria to be career offender.[4] His total offense level is therefore 10 and his criminal history category is IV, giving rise to an advisory guidelines range of 15 to 21 months.

**B. 3553(a) factors**

Regardless of the advisory guidelines range, the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." United States v. Douglas, 713 F.3d 694, 700 (2d Cir. 2013).

---

[3] Decision attached as **Exhibit C.**

[4] I note that in the plea agreement and in the PSR there is an express carve out regarding whether Mr. Guzman's 2005 conviction for New York robbery in the third degree is a "crime of violence." United States v. Amoire Dupree, 17-1846-cr referenced in the plea agreement is still pending on appeal and we still maintain that robbery in the third degree is not a crime of violence. However, given the ruling in Townsend, we need not resolve this issue in order to proceed with Mr. Guzman's sentencing.

Hon. Colleen McMahon  October 4, 2018
Chief United States District Judge  Page 4

    The history and characteristics of Mr. Guzman, as recited above are relevant factors for the Court to consider in this analysis, and so too is his age and health. As the Second Circuit discussed in <u>United States v. Jenkins</u>, the age of the defendant at the time of his release and his life expectancy are relevant considerations to an appropriate sentence. 854 F.3d 181 (2d. Cir. 2017). The <u>Jenkins</u> Court, in evaluating whether a sentence was excessive, noted that "in view of Jenkins's age, this sentence effectively meant that Jenkins would be incarcerated and subject to intense government scrutiny for the remainder of his life." Jenkins at 186. In concluding thusly, the Court references the life expectancy of Mr. Jenkins and in footnote 2, also acknowledges that statistics prove that "life expectancy of an incarcerated person drops significantly for each year of incarceration." Id. note 2.

    The Circuit's analysis was further informed by recidivism statistics, which consistently demonstrate that recidivism rates decrease with age. The sentencing commission itself states "A federal offender's age at time of release into the community was also closely associated with differences in recidivism rates. Offenders released prior to age 21 had the highest re-arrest rate, 67.6 percent, while offenders over sixty years old at the time of release had a recidivism rate of 16.0 percent."[5]

    Mr. Guzman's life expectancy is likely far lower than Mr. Jenkins. Life expectancy for a black man in general, per the CDC in 2015, was 71.8 years.[6] But Mr. Guzman has a host of serious health issues. ██████████████████████████████████████████████████████████████████

    Ms. Larsen discusses the lack of comprehensive mental health treatment within the Bureau of Prisons and the same lack of resources exist regarding medical care. The BOP does not have the funding or the personnel to provide medical or mental health care on par with what can be received within the community.

    When we grapple with what constitutes a just punishment, it must be considered in light of each individuals personal circumstances. There are likely few people who would not be negatively impacted by a criminal charge and subsequent incarceration, but increased incarceration would have a devastating effect excessively

---

[5] https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview
[6] https://www.cdc.gov/nchs/data/hus/hus16.pdf#015

Hon. Colleen McMahon  
Chief United States District Judge

October 4, 2018  
Page 5

punitive impact on Mr. Guzman, jeopardizing his physical health and exacerbating his mental health issues.

Addition incarceration would also not rehabilitate Mr. Guzman or serve the needs of the community. Mr. Guzman's drug use and sales were based on the disease of addiction, mental health issues and medical issues. These diseases cannot be deterred or rehabilitated through incarceration. Instead Mr. Guzman's co-occurring diseases need to be treated in a comprehensive way. Supervision including residential treatment is the only course that would aid Mr. Guzman's rehabilitation and in turn is the only course that would protect the community by decreasing the his risk of reoffending.

**Conclusion**

For the reasons set forth above, I respectfully urge the Court to impose a sentence of time served.

Thank you for your consideration of this request.

Respectfully submitted,

Jennifer E. Willis, Esq.  
Assistant Federal Defender  
Federal Defenders of New York  
(212) 417-8743

CC: AUSA Robert Sobelman  
Steven Guzman